### THE SEABOARD NO. 63.

### THE GEORGE WHITEFIELD.

### SEABOARD SAND & GRAVEL CORPORATION v. MORAN TOWING CORPORATION et al.

#### No. 17228.

District Court, E. D. New York.

Jan. 8, 1947.

Foley & Martin, of New York City, (Louis J. Lawrence, of New York City, of counsel), for libellant.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan, of New York City, of counsel), for Moran Towing Corporation.

J. Vincent Keogh, U. S. Atty., of New York City (Leo J. Curren, of New York City, of counsel), for the United States.

James N. Senecal, of New York City, for Jules S. Sottnek Co., Inc.

GALSTON, District Judge.

The scow, Seaboard No. 63, on September 8th, 1944, was brought up port side alongside the steamship George Whitefield, which was berthed at Pier 30 in Brooklyn, arriving there at about four o'clock in the afternoon. The scow was in good condition. It was brought in light to be loaded with ballast. Loading started shortly after her arrival and was completed about eleven o'clock that same evening from the No. 5 hatch.

Some time between her arrival and the completion of the loading, the scow was pushed toward the stern of the steamer. Eskola, the bargeman, said that the port corner of the scow was brought within one foot of the propeller. Other witnesses testified that the distance was considerably greater.

After the loading was completed the bargeman went to his cabin for the night, but at about 5 A.M. he was awakened to find that something was hitting on his port side. He observed that the propeller of the steamer was revolving. Examination of his boat disclosed that she was leaking on the port side near the port corner.

Castle, called as a witness on behalf of the United States, had supervised the stevedoring on the steamship George Whitefield. He confirms the bargeman in respect to the time at which the loading of the No. 63 was completed. He disagreed with Eskola as to the distance of the propeller from the after-part of the No. 63, saying that it was twenty feet away. That is the estimate made also by Protti, the stevedoring boss employed by the Jules Sottnek Company. Despite the contradiction I believe Eskola. He had to labor with language difficulties while on the stand, but gave the impression of being a thoroughly honest witness, and in many respects was corroborated by other witnesses called by the other parties in the case. Thus in the matter of quantity of load, of time of arrival of the shifting tug, Ideal, and the time of arrival of the Moran tug which siphoned the scow, he was corroborated. Moreover, his testimony that the damage to the boat was caused by the turning of the propeller was also corroborated.

The deposition of the master of the Whitefield is certainly not convincing. He admitted that he saw someone move the Seaboard No. 63 some time between the hours of 9 P.M. and 10 P.M., at which time the oil barge also was shifted, and he further admitted that after the stevedores had completed the loading of the scow and had departed for the night, he cast off the scow lines at about 2:30 A.M., but he did not know where the No. 63 was shifted. Nor is there any testimony given by him as to who made the shift.

The log of the Mathiesen tug, Ideal, showed that the Ideal arrived at the steamship Whitefield at 6 A.M. It was this tug which Eskola said shifted him from the side of the ship. Eskola also said that he telephoned the Moran office to send a tugboat as his boat was leaking. The dispatcher of the Moran Towing Corporation corroborated the captain as to that. The time of the receipt of the order from the

captain of the No. 63 was 7 A.M., September 9th. The tug Allentown then arrived at 8:15 A.M., put a siphon on the scow and continued to siphon her until 10:45 A.M.

Eskola likewise is corroborated by ship's witnesses in respect to the time of the turning over of the propeller.

It was negligent on the part of the ship's officers to turn that propeller until they had made certain that the scow was not within striking distance. The only act of negligence indicated in this case must be ascribed to the George Whitefield.

The Moran Towing Corporation, as charterer, will be held secondarily liable. The libellant may have a decree in accordance with the foregoing opinion.

Concurrently with this opinion, appropriate findings of fact and conclusions of law will be filed.